**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S** |
| | ) | **PETITION FOR HABEAS CORPUS** |
| vs. | ) | **RELIEF UNDER 28 U.S.C. § 2255** |
| | ) | |
| Nancy Elizabeth Ferneau, | ) | |
| | ) | Case No. 1:03-cr-046 |
| Defendant. | ) | |
| —————————————————— | ) | |
| | ) | |
| Nancy Elizabeth Ferneau, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06-cv-070 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the Defendant's pro se petition under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence, filed on September 11, 2006. On September 12, 2006, the Court reviewed the motion and ordered the Government to file a response. On November 9, 2006, the Government filed a response requesting that the Court deny the Defendant's motion for post-conviction relief. The Defendant filed a reply brief on December 12, 2006. For the reasons set forth below, the motion is denied.

I.     **BACKGROUND**

On July 9, 2003, the defendant, Nancy Elizabeth Ferneau ("Ferneau"), and four others were charged in a nine-count indictment with various drug and firearm offenses. Count One charged Ferneau and four other individuals with conspiracy to distribute and possess with intent to distribute

methamphetamine.  See Docket No. 11.  On December 18, 2003, a jury found Ferneau guilty on the drug conspiracy count.  See Docket No. 131.  As to the drug conspiracy count, the jury found that the conspiracy involved over 50 grams of methamphetamine or over 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

Ferneau was sentenced on March 9, 2004.  The Presentence Investigation Report ("PSR") calculated a total offense level of 36 and criminal history category VI, yielding an advisory Sentencing Guideline range of 324 - 405 months.  See PSR, pp. 13-21.  The total offense level of 36 was arrived at by starting with a base offense level of 34 because the conspiracy conviction involved 2,446.92 grams of methamphetamine of which 404.37 grams were actual methamphetamine; and a two-level increase under U.S.S.G. § 3B1.1(c) as a manager or supervisor of criminal activity involving five or more participants.

Ferneau objected to the calculations.  Ferneau asserted that the base offense level should be a 32; that the two-level enhancement under U.S.S.G. § 3B1.1(c) should not apply; and that she should receive a two-level decrease under U.S.S.G. § 3B1.2 as a minor participant.  See Sentencing Tr. 4-6.  The Court rejected Ferneau's objection to the base offense level and agreed with the probations officer's determination of the quantity of methamphetamine and resulting offense level. See Sentencing Tr. 10-13.  The Court agreed with Ferneau that she should not be assessed a two-level enhancement under U.S.S.G. § 3B1.1(c).  See Sentencing Tr. 14-16.  However, the Court rejected Ferneau's request for a two-level reduction under U.S.S.G. § 3B1.2 for being a minor participant.  See Sentencing Tr. 13-14.  The Court determined that Ferneau's total offense level was 34 with a criminal history category VI, resulting in an advisory sentencing guideline range of 262 - 327 months.  See Sentencing Tr. 16.  The  Court sentenced Ferneau to a 300-month term of imprisonment.  See Docket No.  157.

On March 17, 2004, Ferneau filed a notice of appeal.  See Docket No. 158.  Ferneau appealed her conviction and sentence.  On appeal, Ferneau argued that (1) the evidence was insufficient to convict; (2) her Sixth Amendment right to be present at trial was violated when she was excluded from a pretrial hearing; (3) the Court erred when it occasionally failed to admonish the jury not to discuss the case amongst themselves during a recess; (4) she was entitled to a two-level reduction for being a minor participant; and (5) her sentence violated the Sixth Amendment.  See United States v. Barth, 424 F.3d 753 (8th Cir. 2005).  The Eighth Circuit Court of Appeals rejected all of Ferneau's claims and affirmed the conviction and sentence.  Id.

On September 11, 2006, Ferneau filed a motion under 28 U.S.C. § 2255.  Ferneau alleges several deficiencies with her conviction and sentence, including: (1) ineffective assistance of counsel; (2) inadequate voir dire; (3) insufficient evidence; (4) introduction of false testimony; (5) prosecutorial misconduct; (6) errors in sentencing; and (7) jurors' unawareness of the potential sentence.


## II.   LEGAL DISCUSSION

A motion under 28 U.S.C. § 2255 is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors.  Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994).  "To the fullest extent possible, all arguments, even constitutional or jurisdictional ones, should be made at trial and on direct appeal."  See United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995).

> Once the defendant's chance to appeal has been waived or exhausted . . . federal courts are entitled to presume [the defendant] stands fairly and finally convicted, especially when [the defendant] already has had a fair opportunity to present [her] federal claims to a federal forum.  Thus, when a defendant fails to raise an issue on

direct appeal, he or she is generally barred from raising that issue for the first time
in a post-conviction proceeding.

Wilson v. United States, Civ. No. 06-1233(RHK), Crim. No. 02-361 (RHK/RLE), 2006 WL

3086896 (D. Minn. Oct. 30, 2006) (citing United States v. Frady, 456 U.S. 152 (1982) and Reid v.

United States, 976 F.2d 446 (8th Cir. 1992)) (internal quotations and citations omitted).

　　　　To obtain post-conviction relief on a claim that was not previously raised on direct appeal,

"a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States

v. Frady, 456 U.S. 152, 164 (1982).  The petitioner must show both sufficient cause to excuse the

procedural default and actual prejudice resulting from the claimed error.  Id.; United States v. Moss,

252 F.3d 993, 1001 (8th Cir. 2001); United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996);

United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995).

### A.　　INEFFECTIVE ASSISTANCE OF COUNSEL

　　　　It is well-established that a peittioner's ineffective assistance of counsel claim is properly

raised under 28 U.S.C. § 2255 rather than on direct appeal.  United States v. Davis, 452 F.3d 991,

994 (8th Cir. 2006).  The burden of demonstrating ineffective assistance of counsel is on a defendant.

United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th

Cir. 2003).  To be eligible for habeas relief based on ineffective assistance of counsel, a defendant

must meet the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984).  A

defendant must first establish that counsel's representation was constitutionally deficient, which

requires a showing that counsel's performance fell below an objective standard of reasonableness.

Id. at 687-88; see also Wiggins v. Smith, 539 U.S. 510 (2003).  This requires showing that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

by the Sixth Amendment.  Strickland v. Washington, 466 U.S. 688, 687 (1984).  In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  If the underlying claim (i.e., the alleged deficient performance) would have been rejected, counsel's performance is not deficient.  Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).  Courts seek to "eliminate the distorting effects of hindsight" by examining counsel's performance from counsel's perspective at the time of the alleged error.  Id.

A defendant must show that the deficient performance prejudiced her defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant.  Id. at 690-91.  A reasonable probability  is one "sufficient to undermine confidence in the outcome."  Wiggins v. Smith, 539 U.S. 510, 534 (2003).  Merely showing a conceivable effect is not enough.  When evaluating the probability the result would have been different, a court views the alleged error in light of the totality of all the evidence before the jury to gauge the effect of the error.  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006).

Where a defendant raises multiple claims of ineffective assistance, each claim of ineffective assistance must be examined independently rather than collectively.  Hall v. Luebbers,296 F.3d 385, 692-693 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903-904 (8th Cir. 1994).

Construing the petition liberally, it appears Ferneau has alleged ineffective assistance of counsel as follows:  (1) counsel was inexperienced in criminal law; (2) counsel failed to move for a change of venue; (3) counsel failed to call witnesses; (4) counsel stipulated to essential elements of the offense; (5) counsel failed to adequately investigate the case; (6) counsel failed to object to the sentence; (7) counsel failed to move for severance; (8) counsel failed to request adequate jury

5

instructions; (9) counsel failed to object to evidence regarding Ferneau's alleged cocaine usage; and (10) counsel failed to move to suppress statements made in violation of Ferneau's right to <u>Miranda</u> warnings.[1]

## 1.    EXPERIENCE OF DEFENSE COUNSEL

Ferneau asserts that her defense counsel was inexperienced in criminal cases and that he specialized in bankruptcy, wills, probate, and divorce cases.  The Government asserts that Ferneau's trial counsel had experience in criminal cases, including drug conspiracy cases, prior to his appointment to Ferneau's case and cites to several cases in which Ferneau's trial counsel was counsel of record.  <u>See</u> <u>United States v. Stroh</u>, 176 F.3d 439, 439 (8th Cir. 1999)(conspiracy to distribute a controlled substance, distribution of a controlled substances, money laundering, and conspiracy to launder money); <u>State v. Murchison</u>, 541 N.W.2d 435, 437-438 (N.D. 1995)(delivery of marijuana); <u>State v. Woehloff</u>, 540 N.W.2d 162, 164 (N.D. 1995)(burglary and theft); <u>State v. Murchison</u>, 537 N.W.2d 365 (N.D. 1995)(aggravated assault, assault, and terrorizing).

It is well-established that simply claiming counsel was inexperienced is insufficient to show ineffective assistance.  <u>See</u> <u>United States v. Cronic</u>, 446 U.S. 648, 665 (1984); <u>United States v. Brady</u>, No. 4:05-cr-023, 2006 WL 3498558, *3 (D. N.D. Dec. 1, 2006).  While inexperience may be a factor in evaluating an attorney's actual performance, a defendant must still satisfy the <u>Strickland</u> test of establishing both deficient performance and prejudice.  Ferneau has failed to demonstrate how counsel's alleged inexperience resulted in deficient performance or prejudiced the

---

[1]The Court notes that it is difficult to discern from Ferneau's pro se petition whether she is alleging her counsel was deficient in regard to the above enumerated issues, or whether Ferneau is alleging each of these issues constitute errors separate and apart from the performance of her counsel.  To the extent that Ferneau's allegations could possibly be construed as a failure of her counsel, the Court will analyze such claims as ineffective assistance of counsel claims.

result of the proceedings.  The Court finds that Ferneau's claim of inexperience, which is wholly unsupported by the record, does not establish a claim for ineffective assistance of counsel.  As a result, Ferneau has failed to establish that her Sixth Amendment right to counsel was violated.

## 2.     CHANGE OF VENUE

Ferneau also contends that her counsel was ineffective in failing to file a motion for change of venue because of publicity prior to and during the trial.  Ferneau argues that during her trial "the Bismarck Tribune and all the local TV stations plastered [her] picture and headlines stating 'Biggest case in North Dakota history, Major drug ring busted.'"  See Docket No. 197-1, p. 1.  Ferneau alleges the media coverage took place during the week of August 5-12, 2003, more than four months prior to the trial.  See Docket No. 211.  The Government asserts that Ferneau is unable to show that such a motion would have been successful or that she was prejudiced by counsel's failure to file a motion for change of venue.

Rule 21(a) of the Federal Rules of Criminal Procedure provides that, upon the defendant's motion, a trial court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there.  It is well-settled that a trial court has broad discretion in determining whether a defendant should be granted a change of venue.  See Walker v. Bishop, 408 F.2d 1378, 1389 (8th Cir. 1969).  It should be noted that the Government's choice of forum is ordinarily respected.  See United States v. McManus, 535 F.2d 460, 463 (8th Cir 1976).

A court applies a two-tier analysis in determining whether a change of venue based upon pretrial publicity is warranted.  United States v. Gamboa, 439 F.3d 796, 815 (8th Cir. 2006).  First,

7

a court must determine "whether the pretrial publicity was so extensive and corrupting that unfairness of constitutional magnitude must be presumed."  Id.  If such a presumption is not warranted, a court must then examine the jury selection process to determine if an inference of actual prejudice is shown.  United States v. Allee, 299 F.3d 996, 1000 (8th Cir. 2002).  In doing so, the court must examine the voir dire testimony to determine whether the jury panel selected was impartial.  Id.; Gamboa, 439 F.3d 796, 815.  The "mere exposure to publicity or the formation of tentative impression by some jurors is not enough to require a change of venue."  U.S. v. Bliss, 735 F.2d 294, 298 (8th Cir. 1984).

Ferneau first asserted that there was extensive publicity during her trial, and then, in her reply brief, argued that the publicity occurred prior to her trial.  Other than Ferneau's unsupported allegations, the record is devoid of any evidence to establish the extensiveness of the alleged publicity surrounding the trial.  The Court finds that Ferneau has failed to establish that the media coverage was so extensive and corruptive to warrant a presumption of prejudice.

Because the presumption of prejudice does not apply, the Court must next determine whether the jury panel selected was impartial.  During jury selection, the Court inquired no less than four times whether any of the prospective jurors knew anything about the case or whether they knew any of the attorneys or defendants.  See Trial Tr. 17, 21, 30, 56.  None of the jurors ultimately selected indicated that they knew anything about the case.  The transcript of voir dire reflects that none of the prospective jurors had any knowledge of the case.  See Trial Tr. 17-31, 56-57.  When asked by the parties' attorneys, none of the prospective jurors' answers indicated any knowledge of the case. See Trial Tr. 102-145.  Prospective jurors who indicated that they had a problem with the requirement of proof beyond a reasonable doubt, believing that the playing field should be leveled,

did not serve as jurors. See Trial Tr. 129-132, 149-150.  The Court finds that the jury selection process was void of any inference of prejudice.

As to Ferneau's complaint that the media coverage of the trial prejudiced the jurors during the trial, the Court specifically instructed the jurors not to read any newspapers or search the Internet or listen to any radio or television reports of the case.  See Trial Tr. 173.  Jurors are presumed to follow the Court's instructions.  See United States v. Delpit, 94 F.3d 1134, 1144 (8th Cir. 1996).

After carefully reviewing the transcript of the voir dire process and the jury instructions given throughout the trial, the Court finds that Ferneau has failed to establish that media coverage of the trial warranted a change of venue, either prior to trial, upon the completion of voir dire, or during the trial.  In other words, the Court finds that Ferneau's counsel's performance and the failure to  request a change of venue did not fall below an objective standard of reasonableness, and that Ferneau has failed to establishe that she was prejudiced by her counsel's failure to seek a change of venue.  As a result, Ferneau's claim regarding a change of venue must fail.

### 3.     FAILURE TO CALL WITNESSES

Although it is not clear from the pleadings, it appears that Ferneau is contending that  her counsel was ineffective for failing to call certain witnesses as character witnesses.  Ferneau attached letters of support from her sisters (Julia Fleisher and Maggie Armijo), her mother (Kathy Anderson), and three friends (Craig Sivertsen, Leslie Moss, and Linda Mateo).  See Docket No. 197-2, pp. 28-35.  The Government asserts that Ferneau has failed to establish that declining to call these witnesses amounted to deficient performance by her counsel or that such a failure resulted in prejudice to her case.

Counsel's decision whether to call a witness at trial is normally a trial strategy decision that is presumed reasonable and cannot be challenged. United States v. Rice, 449 F.3d 887, 898 (8th Cir. 2006); United States v. Staples, 410 F.3d 484, 488 (8th Cir. 2005). This presumption is dependent upon the adequacy of counsel's investigation. White v. Roper, 416 F.3d 728, 732 (8th Cir. 2005). Counsel cannot be deemed ineffective if he is unaware of the potential witnesses. United States v. Davidson, 122 F.3d 531, 538 (8th Cir. 1997).

Ferneau has neither alleged nor demonstrated that her counsel was aware of the potential testimony of these witnesses. Nor has Ferneau established that the information to which these witnesses could have testified would have had an effect on the outcome of the case. It appears that none of the potential witnesses had first-hand knowledge of Ferneau's activities in Bismarck, North Dakota. Only one of the potential witnesses appears to have resided in North Dakota during the period covered by the drug conspiracy charge. The remainder of the potential witnesses appear to reside in the state of Washington. A thorough review of the witnesses' proffered testimony reveals that, if called to testify, each would have provided general character evidence. These witnesses generally state that they have never seen Ferneau use methamphetamine, that Ferneau has been in trouble in the past, and that Ferneau is a good person.

As the Government points out, if these witnesses had been called, they would have been subject to cross-examination about their awareness of specific instances of Ferneau's conduct. Rule 404(a)(1) of the Federal Rules of Evidence allows the use of evidence of the character of the accused. However, on cross-examination, the Government is allowed to inquire as to specific instances of conduct. See Fed. R. Evid. 404(a); United States v. Michelson, 335 U.S. 469, 478-484 (1948); United State v. Grady, 665 F.2d 831, 834-835 (8th Cir. 1981). The Government likely would have been allowed to impeach these witnesses with Ferneau's prior convictions involving

10

material used to manufacture methamphetamine which occurred during the period of the alleged conspiracy.  See PSR ¶¶ 71-74.  Such impeachment would have greatly diminished the value of the witnesses statements that Ferneau was never involved with methamphetamine, and undoubtedly would have been detrimental to Ferneau's defense that she was not involved with methamphetamine.

Aside from the introduction of damaging information on cross-examination, the general proposition offered by each of Ferneau's potential witnesses, i.e., that Ferneau was not involved with methamphetamine, was advanced by her counsel through the cross-examination of Government witnesses.  Several of the Government witnesses testified that they did not know Ferneau, and a few of those who knew her stated that they had never seen Ferneau with methamphetamine.  See Trial Tr. Testimony of Raymond Kershaw 270-283; James Chrisikos 333-373; William Canada 396-407, 415-416;  Leslie Schmidt 588-612, 622-623; Jason Kramer 641-677, 697; Charles Chadwick  985-994;  Tara Letvin 1032-1045, 1049; Jennifer Wilke 1060-1080, 1085-1086, 1093-1094;  Blaine Martinez 1109-1110, 1117, 1132-1133; Patricia "Trish" Walsh 1153-1182; Scott Messner 1186-1207; and Tim Sailer 1275-1279.

Even if the Court assumes that counsel was aware of the above-identified witnesses in spite of Ferneau's failure to establish such knowledge, counsel's strategic decision to forgo such character testimony was reasonable.  Counsel had to balance the value of the character testimony against the potential for damaging testimony which could have been elicited on cross-examination.  Counsel also had to weigh the fact that he had been able to advance the defense theory that Ferneau was not involved in methamphetamine through cross-examination of some of the Government's witnesses.  Under the circumstances, the Court finds that counsel's strategic decision not to call the potential character witness was not unreasonable.

11

Even if the Court were to find that counsel's performance was deficient in failing to call character witnesses, Ferneau had failed to establish prejudice, i.e., that the results of the proceeding would have been different. When determining whether prejudice exists, a court must consider the totality of the evidence. Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006). In this instance, the Court must add the proffered testimony from Ferneau's character witnesses to the evidence before the jury and then "gauge the likely outcome of the trial based on this total body of evidence." Id. "In doing this analysis, the court should be mindful of (1) the credibility of all witnesses, including the likely impeachment of the uncalled defense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." Id. (internal citations omitted).

As previously noted, the Court finds that it is likely the proffered character witnesses would have been impeached with evidence of Ferneau's prior convictions. As for the evidence presented at trial, dozens of witnesses testified. The Government provided a thorough summary of the witnesses and evidence that implicated Ferneau in the drug conspiracy.

Rigoberto Fernandez testified that he was hired by codefendant Rosalio Vargas to transport methamphetamine from Washington state to Bismarck, North Dakota (Tr. 838-40, 847). He made eight successful trips from Washington to Bismarck, but was caught in Montana on his ninth trip (Tr. 838-840, 847). Upon arriving in Bismarck, Fernandez said he would take the drugs to Ferneau's trailer per Vargas' direction (Tr. 843, 845). Once there, Vargas and Ferneau would divide up the drugs (Tr. 846). Ferneau then called people who would arrive and be supplied with methamphetamine (Tr. 848, 849). According to Fernandez, Ferneau would distribute the drugs to persons who arrived (Tr. 848).

One of the persons Fernandez identified who arrived to pick up drugs was a man named Douglas Frederick, a/k/a "the Doc" (Tr. 848). In August 2001, Bismarck Police Detective Roger Becker had contact with Ferneau in reference to the purchase of methamphetamine manufacturing materials (Tr. 1241-42, 1258). During this encounter, Detective Becker found an address book in Ferneau's purse which had the number for a Douglas Frederick (Tr. 1245-46).

Fernandez testified that another of the persons who obtained drugs at Ferneau's was James Rhone (Tr. 864). James Rhone testified that Ferneau was his

source of methamphetamine at one point, and that he began selling methamphetamine for Ferneau (Tr. 910-12, 953). Rhone noted that the methamphetamine deals between he and Ferneau would take place at Ferneau's trailer. He further stated that this trailer was where he first saw Vargas and Fernandez (Tr. 912-16). Rhone testified that he was present when Vargas and Fernandez brought drugs to Ferneau's trailer, and that he obtained drugs from Vargas at Ferneau's residence (Tr. 917, 920). The address book Detective Becker found in Ferneau's purse in August 2001 also had Rhone's number in it (Tr. 1244).

Fernandez testified that Shawn Barth was another person who would arrive at Ferneau's home on at least one occasion and obtain drugs (Tr. 848-49, 878). James Rhone testified that he observed Ferneau distribute methamphetamine to Barth (Tr. 931-32). Detective Becker also found Barth's telephone number in Ferneau's address book during the August 2001 incident. (Tr. 1245).

Fernandez testified Ferneau would collect money from the drug sales (Tr. 850). Patricia Walsh testified that, on one occasion, she drove Ferneau around to locations during which Walsh observed Ferneau had a large amount of cash (Tr. 1168-69). When Walsh asked Ferneau about the cash, Ferneau replied that Walsh didn't need to know (Tr. 1170). According to Walsh, Ferneau told her that she had stolen money from Vargas and Fernandez (Tr. 1171). Detective Becker testified that in March 2001, he received a voice-mail message and subsequently a call from Ferneau. In the message, Ferneau advised Becker that Vargas was in town, that he had told Ferneau's daughter that Ferneau had fucked him over, and that Vargas was looking for a gun (Tr. 1240). During the phone call, Ferneau told Becker that Vargas had informed Ferneau's daughter that Ferneau was to keep her mouth shut (Tr. 1241).

DEA Agent Dunlap testified he interviewed Ferneau after Fernandez had been arrested on drug charges in Montana (Tr. 803-04). Ferneau informed Dunlap that Vargas asked her to contact the Custer County Jail were Fernandez was lodged to check on Fernandez' detention status and attempt to recover the car Fernandez was driving at the time of his arrest (Tr. 809). This vehicle contained a large amount of methamphetamine and marijuana. Dunlap testified that Ferneau also admitted purchasing cell phones for Fernandez, one of which was used by Vargas (Tr. 810).

See Government's Response Brief, pp. 16-19 (Docket No. 210) (footnote omitted).

As the record reflects, much of the Government's evidence against Ferneau was introduced

through the testimony of Fernandez, and Fernandez's testimony was corroborated by the other

witnesses identified above. After carefully reviewing the totality of the evidence, the Court finds

that the inclusion of the proffered character witness testimony would not have resulted in a different

outcome. As discussed above, the Government's ability to impeach these character witnesses with

Ferneau's prior convictions would have lead to the introduction of additional incriminating evidence. The Court finds that there was overwhelming evidence of Ferneau's guilt.  Thus, the Court further finds that even if the testimony of the character witnesses would have been introduced, Ferneau has failed to establish a reasonable probability that the results of the trial would have been different.  Ferneau's claims that the failure to introduce testimony of character witnesses played a significant role in her conviction must fail as a matter of law.

### 4.      STIPULATION TO ESSENTIAL ELEMENTS OF THE OFFENSE

Ferneau alleges that her counsel was ineffective because he stipulated to elements of her offense.  Ferneau does not identify what element(s) were allegedly a part of the stipulation, nor does she indicate whether the stipulation was written or oral.

The record is devoid of any evidence to support Ferneau's allegation that her counsel stipulated to certain elements of the drug conspiracy charge.  At best, the record reflects that counsel, in his closing argument, did not seriously challenge the agreement or understanding element of the conspiracy charge.  Such a strategy was not unreasonable given the amount of evidence supporting the conclusion that an  agreement or understanding existed.  Ferneau's trial counsel vehemently asserted that if a conspiracy existed, Ferneau was not a part of it.  The Court finds that Ferneau has failed to provide any evidence to support her proposition that her counsel entered in to a stipulation admitting certain element(s) of the alleged drug conspiracy offense.  As a result, Ferneau is unable to establish her counsel's performance was deficient.  The Court finds that this claim must fail as a matter of law.

5.      **INVESTIGATION OF THE CASE**

Ferneau also asserts that her counsel was ineffective for failing to properly investigate her case, and that she was not "given an expert or other services necessary for adequate representation." See Docket No. 197-1, p. 11.  Ferneau wholly fails to set forth specific details as to why her counsel's investigation was allegedly deficient.  Ferneau fails to suggest what new evidence or legal arguments a more thorough investigation would have revealed.  To succeed on a claim of ineffective assistance of counsel based on an inadequate investigation, a petitioner must demonstrate that a more thorough investigation would have revealed evidence which would establish a reasonable probability that the results of the trial would have been different.   See United States v. Purkett, 15 F.3d 785, 789-790 (8th Cir. 1993).

The Court finds that Ferneau has failed to establish that her counsel was deficient in failing to conduct a thorough investigation.  Ferneau's passing reference to the fact that her counsel did not employ an expert witness is of little value when Ferneau fails to allege what type of expert would have assisted in her defense.  The Court also finds that Ferneua has failed to establish that she was prejudiced as a result of her counsel's performance.  As a result, the Court finds that Ferneau's claim of ineffective assistance of counsel based on inadequate investigation must fail as a matter of law.


6.      **OBJECTION TO SENTENCE**

Ferneau asserts that her counsel was ineffective for failing to object that her sentence was based on facts not found by the jury.  The Government asserts that at the time of Ferneau's sentencing on March 9, 2004, neither Blakely v. Washington, 542 U.S. 296 (2004), nor United States v. Booker, 543 U.S. 220 (2005), had been decided by the United States Supreme Court.  The

Government acknowledges that Apprendi v. New Jersey, 530 U.S. 466 (2000), had been decided and that Apprendi only required the jury to find facts that raised the statutory maximum penalty.

At the time of Ferneau's sentencing, trial courts were permitted to make factual findings by a preponderance of the evidence in determining a defendant's sentencing range without violation of the Sixth Amendment.  See United States v. Evans, 285 F.3d 664, 672 (8th Cir. 2002); United States v. Kurkowski, 281 F.3d 699, 703 (8th Cir. 2002); United States v. Hartje, 251 F.3d 771, 776 (8th Cir. 2001).  Any objection by counsel based on factual findings for sentencing purposes would not have been supported by case law.  It is well-established that counsel is not ineffective for failing to anticipate a change in the law.  Parker v. Bowersox, 188 F.3d 923, 929 (8th Cir. 1999); Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990).  The Court finds that Ferneau has failed to establish that counsel's failure to object to her sentence at the time of sentencing was deficient performance.

To the extent that Ferneau is asserting that her counsel failed to pursue this issue on appeal, the record clearly establishes that Ferneau's counsel raised Blakely issues on appeal and that the Eighth Circuit Court of Appeals rejected her Blakely claims on appeal.  Barth v. United States, 424 F.3d 753 , 764 (8th Cir. 2005).  Thus, Ferneua has failed to establish that her counsel was ineffective for failing to object to her sentence.  The Court finds that this claim must fail as a matter of law.


### 7.   SEVERANCE

Although not entirely clear from the petition, it appears that Ferneau is asserting that her trial counsel was ineffective in failing to file a motion to sever her case from the other defendants. Ferneau contends that there was insufficient evidence to convict her and that she was merely found guilty by association.  The Government argues that Ferneau's claim must fail.

To prevail on this claim, Ferneau must first establish that a motion to sever would have been successful. A severance under Rule 14 should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." <u>Zafiro v. United States</u>, 506 U.S. 534, 538 (1993). However, a defendant is "not entitled to severance merely because they may have a better chance of acquittal in separate trials." <u>Id.</u> As a general rule, persons charged with a conspiracy will be tried together, especially where proof of the charges against each of the defendants is based on the same evidence and acts. <u>United States v. Foote</u>, 920 F.2d 1395, 1398 (8th Cir. 1990) (citing <u>United States v. O'Meara</u>, 895 F.2d 1216, 1218 (8th Cir.) <u>cert. denied</u>, 498 U.S. 943 (1990)). It is well-established that a defendant can demonstrate real prejudice to her right to a fair trial by showing (a) her defense is irreconcilable with that of a co-defendant or (b) the jury will be unable to compartmentalize the evidence as it relates to the separate defendants. <u>United States v. Washington</u>, 318 F.3d 845, 858 (8th Cir. 2003). The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions. <u>United States v. Mickelson</u>, 378 F.3d 810, 818 (8th Cir. 2004). The defendant has the burden to establish that severance is warranted and necessary. <u>Bear Stops v. United States</u>, 204 F. Supp.2d 1209, 1215-1216 (D. S.D. 2002).

The Court finds that Ferneau has failed to establish that a motion for severance would have been granted. Ferneau has failed to show that her defense was irreconcilable with that of her co-defendants. The acquittal of one of the co-defendants belies any claim by Fereneau that the jury was unable to compartmentalize the evidence. Thus, Ferenau's counsel's failure to move for severance cannot be considered ineffective because there was no basis for the motion.

Even if Ferneau were able to show that severance was warranted under the circumstances, Ferneau has failed to establish that the results of a separate trial would have been different. As

detailed above, the evidence against Ferneau was overwhelming and would have been admissible in a separate trial.  In addition, the record clearly reflects that the Court instructed the jury to "consider each count separately as to each defendant and return a special verdict for each defendant charged in each count."  <u>See</u> Trial Tr. 166.  The Court also  instructed the jury that:

> . . . merely being present at the scene of an even, or merely acting in the same way as others or merely associating with others, does not prove that person has joined in an agreement of understanding.  A person who has knowledge of a conspiracy but who happened to act in a way which advances some purpose of one, does not there by become a member.

<u>See</u> Trial Tr. 1345; Eighth Circuit Manual of Model Jury Instructions, Criminal § 506B (2003).  The jury was also instructed that:

> if you find that the alleged conspiracy did exist, you must decide whether a defendant voluntarily and intentionally joined the conspiracy, either at the time it was first formed or at some later time while it was still in effect.  In making that decision, you must consider only evidence of that defendant's own actions and statements.

<u>See</u> Trial Tr. 1346; Eighth Circuit Manual of Model Jury Instructions, Criminal § 506B (2003).  Such instructions were sufficient to cure any potential prejudice.  <u>See</u> <u>Zafiro v. United States</u>, 506 U.S. 534, 537 (1993) (holding that instructions requiring the jury to consider the  evidence as to each defendant and each count separately coupled with instructions that each defendant is entitled to have her case determined from her own conduct are sufficient to cure any possibility of prejudicial joinder of defendants).

The Court finds that Ferneau's claim that her counsel's failure to move to sever her trial from that of her co-defendants played a significant role in her conviction must fail as a matter of law.  The Court finds that there is no reasonable probability that the result would have been different.

8.    **JURY INSTRUCTIONS**

Ferneau also complains that a buyer/seller instruction should have been given to the jury. Like several of her other claims, it is difficult to determine whether Ferneau is asserting her counsel was ineffective for failing to request such an instruction.  However, the Court will construe the complaint liberally and review Ferneau's claim as an ineffective assistance of counsel claim.  The Government asserts that Ferneau's claim must fail, in part, because the facts of the case did not warrant a buyer/seller instruction.

It is well-established that there must be evidence to support a proposed instruction before a court is obligated to instruct the jury in the manner requested.  United States v. Crawford, 449 F.3d 860, 862 (8th Cir. 2006).  It is also clear that a buyer/seller relationship standing alone is insufficinet to establish a conspiracy.  United States v. Finch, 16 F.3d 228, 231 (8th Cir. 1993).  The Eighth Circuit has held that a buyer/seller instruction may be appropriate where the evidence demonstrates that there are single sales of small amounts of controlled substances consistent with personal use and "no independent evidence tending to prove the defendant had some knowledge of the broader conspiracy." United States v. Vinton, 429 F.3d 811, 815 (8th Cir. 2005).  However, buyer/seller instructions are not appropriate where there is evidence of distribution of larger amounts of drugs over a period of time.  See United States v. Finch, 16 F.3d 228, 231 (8th Cir. 1993).

As previously discussed, the evidence against Ferneau was overwhelming.  Cooperating co-defendant Rigoberto Fernandez indicated that the conspiracy involved numerous occasions where methamphetamine was transported from out-of-state directly to Ferneau's home in Bismarck, North Dakota.  See Trial Tr. 838-848.  James Rhone testified that for a period of time Ferneau supplied him with  methamphetamine to sell.  See Trial Tr. 910-912, 953.  The Court finds that because of the evidence presented which established multiple drug sales of quantities inconsistent with personal

use, an instruction on buyer/seller was not warranted by the facts.  The Court finds that counsel's performance was not deficient in failing to request such an instruction.

Even if the Court were to determine that a buyer/seller instruction were appropriate, Ferneau has not demonstrated a reasonable probability that the result would have been different.  The evidence presented at trial established that Ferneau's involvement was beyond that of a buyer/seller.  The Court finds that Ferneau has failed to establish that the inclusion of a buyer/seller jury instruction would have resulted in a more favorable outcome.  As a result, the Court finds that this claim must fail.

### 9. EVIDENCE REGARDING COCAINE USE

Ferneau asserts that evidence of a 1987 conviction was improperly admitted into evidence during the trial through the testimony of Drug Enforcement Agency Agent Dan Dunlop.  Again, it is difficult to determine whether Ferneau is asserting her counsel was ineffective for failing to object to such evidence.  However, the Court will construe the complaint liberally and review Ferneau's claim as an ineffective assistance of counsel claim.  The Government contends this claim should be summarily denied.

A thorough review of DEA Agent Dunlop's testimony reveals that he did not make a statement regarding Ferneau's use of cocaine nor a prior conviction for cocaine possession.[2]  The Court finds that this claim is wholly without merit and must be dismissed.

---

[2]The PSR includes information regarding Ferneau's 1988 conviction for possession of cocaine.  No criminal history points were assessed for this prior conviction.  See PSR, ¶¶ 38-39.

10.    **MIRANDA WARNING**

Finally, Ferneau complains that statements she made to Agent Dunlap were in violation of her Miranda rights.  As with several of Ferneau's claims, it is unclear whether she intends to assert an ineffective assistance of counsel claim for her counsel's failure to file a motion to suppress her statements to DEA Agent Dunlop.  Nevertheless, the Court will construe the complaint liberally and review Ferneau's claim as an ineffective assistance of counsel claim.  The Government argues that such a motion would have been denied because Ferneau was not in custody at the time of interview.

In order to obtain habeas relief, Ferneau must show that her suppression claim is "meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence."  Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (where allegation of ineffective assistance of counsel claim is based on a failure to litigate Fourth Amendment claim, defendant must "prove that Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence").  In other words, Ferneau must show that DEA Agent Dunlap was required to and failed to administer Miranda warnings to her.

It is clear that the Government may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of a defendant, unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).  It is also well-established that law enforcement officers must administer Miranda warnings whenever a suspect is "taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." Miranda v. Arizona, 384 U.S. 436, 478-479 (1966).  A person is in custody when she is either formally arrested or her freedom of movement is constrained to a degree equivalent with formal arrest.  United States v. Brave Heart,

21

397 F.3d 1035, 1038 (8th Cir. 2005). The Miranda custody test is an objective test; two discrete inquiries are essential: (1) the circumstances surrounding the interrogation, and (2) given those circumstances, whether a reasonable person would have felt free to terminate the interrogation and leave. Yarborough v. Alvarado, 541 U.S. 652, 663 (2004) (citing Thompson v. Keohane, 516 U.S. 99, 133 (1995)). In Berkemer v. McCarty, 468 U.S. 420, 442 (1984), the Supreme Court affirmed that an objective test is preferable to a subjective test because under the objective analysis the police do not have the burden of anticipating the frailties or idiosyncrasies of every person whom they question.

It is well-established in the Eighth Circuit that the totality of circumstances must be looked at and that six factors are to be considered in determining whether an individual was held in custody: (1) whether the suspect was informed during the interview that the questioning was voluntary, that she could ask the officers to leave, or that she was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect voluntarily acquiesced to official questioning or initiated contact with authorities; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether there was a police-dominated atmosphere; and (6) whether the suspect was placed under arrest at the termination of the questioning. United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990). However, the Eighth Circuit does not require that the Griffin test be followed ritualistically in every Miranda case. United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004). "When the factors are invoked, it is important to recall that they are not by any means exclusive, and that 'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." Id. The most obvious way to demonstrate that a person is not in custody is to tell her

that she is not in custody and that she may terminate the questioning at any time.  United States v.

Czichray, 378 F.3d 822, 826; see also United States v. Brave Heart, 397 F.3d 1035, 1039.

Ferneau makes no allegation nor any showing that she was "in custody" at the time she was

interviewed by DEA Agent Dunlap.  A thorough review of the record suggests that Ferneau was not

in custody at the time of the interview.  DEA Agent Dunlap attempted to contact Ferneau several

times to set up an interview and left messages on Ferneau's cell phone.  See Trial Tr. 803.  Ferneau

returned one of Agent Dunlap's messages and agreed to meet him at his office in Billings, Montana.

See Trial Tr. 804, 816.  Agent Dunlap believed that Ferneau contacted him while she was traveling

from Washington state to Bismarck.  See Trial Tr. 803-804.  The record does not reflect that Ferneau

was ever arrested or even secured in any fashion by Agent Dunlap or some other law enforcement

officer either prior to, during, or after the interview.  Once the interview was done, Ferneau left

Billings and presumably continued her trip back to Bismarck.  See Trial Tr. 1174.

The Court finds that Ferneau has failed to establish that a motion to suppress her statements

to DEA Agent Dunlap would have been granted.  Ferneau has failed to establish that she was in

custody at the time of the interview.  Because Ferenau was not in custody at the time of the

interview, Agent Dunlap was not required to provide her a Miranda warning.  Thus, Ferenau's

counsel's failure to move to suppress her statements to DEA Agent Dunlap cannot be considered

ineffective because there was no basis for the motion.

 Even if the Court were to determine that Ferneau's statements were improperly admitted,

Ferneau has failed to establish a reasonable probability that the outcome of the trial would have been

different.  Although the statements were arguably inculpatory, as previously discussed, the other

evidence against Ferneau was abundant.  In the absence of Ferneau's statements there were

numerous witnesses who implicated Ferneau in connection with the drug conspiracy.  Thus,

23

Ferneau's claim that her counsel failed to move to suppress her statements played a significant role in her conviction must fail as a matter of law. The Court finds that there is no reasonable probability that the result of the trial would have been different had the statements been suppressed.

In sum, the Court finds that Ferneau has failed to establish that her counsel was ineffective. As a result, Ferneau is not entitled to habeas relief on her ineffective assistance of counsel claim.

### B.      VOIR DIRE

Ferneau also asserts that the Court did not adequately conduct voir dire to ensure an unbiased jury in light of the alleged publicity the case received. The Government argues this claim is without merit.

As discussed above, a Section 2255 motion is not a substitute for a direct appeal. If a constitutional claim could have been raised on direct appeal but was not, a defendant is entitled to habeas relief only if she can establish cause for the procedural default as well as prejudice. See United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995). To show prejudice, a defendant must show that the alleged error "worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982).

The record reveals that Ferneau did not object to the voir dire process during trial and that she did not raise an issue related to the voir dire process on appeal. To be entitled to habeas relief, Ferneau must first show that her claim implicates constitutional rights. It is well-established that voir dire is crucial to protecting a defendant's Sixth Amendment right to an impartial jury. Morgan v. Illinois, 504 U.S. 719, 729-730 (1992). The Court finds that Ferneau has alleged a constitutional violation in regard to the voir dire process. Ferneau must next establish both cause for her procedural default and prejudice from the claimed error.

Ferneau makes no attempt to show cause for her procedural default.  Her motion contains no explanation why there was no objection as to the voir dire process at trial nor pursuit of the issue on appeal.  Again, Ferneau's inartfully drafted petition hampers the Court's ability to review her claims.  Nevertheless, the Court finds that to the extent Ferneau may be asserting that her counsel's performance establishes cause for her procedural default, the Court finds that it need not determine counsel's effectiveness in relation to Ferneau's procedural default because the Court will also examine whether the alleged violation prejudiced her trial.

A trial court has broad discretion in conducting voir dire and the questions to be asked since the court has the obligation, in the first instance, in selecting an impartial jury.  Rozales-Lopez v. United States, 451 U.S. 182, 189 (1980); United States v. Nelson, 347 F.3d 701, 701 (8th Cir. 2003).  A trial court's voir dire is inadequate it if does not protect the defendant from prejudice or does not allow the defendant to intelligently exercise her peremptory challenges.  Id.

The Court has already conducted a detailed analysis of the possible effect of publicity on the voir dire process in relation to Ferneau's claim that her counsel was ineffective for failing to file a request for a change of venue and finds that it is unnecessary to repeat the analysis.  To the extent Ferneau is challenging the entire voir dire process, the record reveals that the Court engaged in a thorough review of the potential jurors.  The Court asked a series of questions to the group as a whole including, but not limited to:  (1) whether any juror had previously served on a jury ( Trial Tr. 31, 57, 62); (2) whether any juror had been a party or a witness to a lawsuit (Trial Tr. 38, 57, 62); (3) whether any juror or an immediate member of his/her family had been involved in a criminal matter as a defendant, witness, or victim (Trial Tr. 42, 57, 62-63); (4) whether any juror had a dispute or case against the United States (Trial Tr. 57, 64); (5) whether any juror knew any reason they may be prejudiced against the government or the defendants (Trial Tr. 59, 64); (6) whether any

juror harbored any prejudice toward Vargas because of his Hispanic race (Trial Tr. 66); and (7) whether any juror would have a problem following the law as given by the Court even if they disagreed with the law (Trial Tr. 67).  Each attorney also asked questions of the potential jurors, including:  (1) whether any of the prospective jurors worked together or in the same company (Trial Tr. 103, 117-118); (2) whether any of the jurors owned firearms, and whether anyone believed firearms should be banned (Trial Tr. 103-105, 126); (3) whether jurors had contact with any law enforcement agency involved in the case (Trial Tr. 105-112): (4) whether jurors knew any of the Government's anticipated witnesses (Trial Tr. 112-115); (5) whether their association or acquaintance with any of the witnesses or law enforcement officers would cause them to believe those witnesses' testimony over another witnesses' testimony (Trial Tr. 118-119); (6) whether they could follow the Court's instruction that the Government must prove guilt beyond a reasonable doubt (Trial Tr. 121, 128-134); (7) whether they would still require the Government to carry its burden of proof even if the defendants did not present any evidence (Trial Tr. 122-123) ; (8) whether they could find a defendant not guilty if they had already found the other three defendants guilty (Trial Tr. 135-136); and (9) whether there was anything they could think of that would affect their ability to be impartial jurors (Trial Tr. 140, 144).

More important, the Court also afforded each defense counsel an opportunity to question the jury panel to ensure the selection of a fair and impartial jury.  All defense counsel took advantage of the opportunity, including Ferneau's counsel.  See Trial Tr. 116-145

Ferneau fails to identify any specific portion of the voir dire that was inadequate or prevented her or her attorney from intelligently exercising peremptory challenges on her behalf.  The record demonstrates that no juror indicated any knowledge of the case despite being repeatedly asked this question.  After thoroughly reviewing the record, the Court finds that Ferneau has not established

that the voir dire process was inadequate or that her Sixth Amendment right to an impartial jury was violated.  Thus, Ferneau is not entitled to habeas relief on this claim.


### C.   INSUFFICIENT EVIDENCE

Ferneau devotes a majority of her petition to her claim that the evidence was insufficient to indict her and to convict her on the conspiracy charge.  The Government contends this claim should be summarily dismissed.

A challenge to the sufficiency of the evidence is a trial error that cannot be raised in a Section 2255 motion.  Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994).  In addition, the record establishes that Ferenau challenged the sufficiency of the evidence to convict on direct appeal.  See United States v. Barth, 424 F.3d 752, 760-761 (8th Cir. 2005).  Issues that have been decided on direct appeal cannot be relitigated in a Section 2255 motion.  United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

To the extent Ferenau is asserting the grand jury had insufficient evidence to return an indictment, it is also well-established that a defendant cannot challenge the sufficiency of the evidence for the grand jury to find probable cause.  United States v. Nelson, 165 F.3d 1180, 1182 (8th Cir. 1999) (citing Costello v. United States, 350 U.S. 359, 363-364 (1956) and United States v. Cady, 567 F.2d 771, 776 (8th Cir. 1977)).  Even if Ferenau could raise such a challenge, the fact that the petit jury found her guilty at trial defeats her claim.  United States v. Sanders, 341 F.3d 809, 818-819 (8th Cir. 2003).  The Court finds that Ferneau's claims regarding the sufficiency of the evidence against her must fail.  The Court further finds that Ferneau is not entitled to habeas relief on her claim of insufficient evidence.

### D.       **CREDIBILITY AND/OR FALSE TESTIMONY OF WITNESSES**

Ferneau also challenges the credibility of several witnesses asserting that they proffered false testimony.  Ferneau asserts that (1) DEA Agent Dan Dunlap lied about her drug usage; (2) Patricia "Trish" Walsh lied about her observation of a drug deal involving Patty Rhone and Rigoberto Fernandez; (3) James Rhone consistently lied to avoid returning to jail; and (4) Rigoberto Fernandez lied about Ferneau's involvement to receive more lenient treatment.  The Government contends that each claim must fail.

As discussed above, a Section 2255 motion is not a substitute for a direct appeal.  If a constitutional claim could have been raised on direct appeal but was not, a defendant is entitled to habeas relief only if she can establish cause for the procedural default as well as prejudice.  See United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995).  To show prejudice, a defendant must show that the alleged error "worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimension."  United States v. Frady, 456 U.S. 152, 170 (1982).

The record reveals that Ferneau did not object to the testimony of Rigoberto Fernandez or James Rhone.  Ferneau's counsel did object to portions of Agent Dunlap and Walsh's testimony.  See Trial Tr. 796, 807, 1162-1163, 1170, 1172.  However, the objections by Ferenau's counsel did not address the issue of credibility.[3]  The record also reveals that Ferneau did not challenge the

---

[3]Ferneau's counsel objected twice during Agent Dunlap's testimony.  See Trial Tr. 796, 807.  The first objection regarded the relevancy of photographs (trial exhibits 65 &66).  This objection was noted for the record, but the evidence was admitted.  The second objection regarded a non-responsive answer. The question was rephrased and Dunlap was allowed to answer.
      Ferneau's counsel objected four times during Walsh's testimony.  See Trial Tr. 1162, 1163, 1170, 1172. The first objection regarded the redundancy of questions, and this objection was overruled.  The second and third objections regarded leading questions, and these objections were sustained.  The fourth objection regarded hearsay, and this objection was also sustained.

testimony of these witnesses in her direct appeal.  The Court finds that Ferneau's limited objections and failure to raise this issue on appeal results in the procedural default of these claims.

To be entitled to habeas relief, Ferneau must first show that her claims implicate constitutional rights.  While it is unclear whether such claims implicate Ferneau's constitutional rights, the Court will assume that Ferneau has alleged a constitutional violation and will examine whether Ferneau has established both cause for her procedural default and prejudice from the claimed error.

Ferneau makes no attempt to show cause for her procedural default.  Her motion contains no explanation why there was no objection or why she did not pursue the issue on appeal.  Again, the lack of clarity in Ferneau's  petition hampers the Court's ability to review her claims.  Nevertheless, the Court finds that to the extent Ferneau may be asserting that her counsel's performance establishes cause for her procedural default, the Court finds that it need not determine counsel's effectiveness in relation to Ferneau's procedural default because the Court will also examine whether the alleged violation prejudiced her trial.


### 1)   **DEA AGENT DAN DUNLAP**

Ferneau asserts that DEA Agent Dunlap lied during his testimony.  At trial, Agent Dunlap testified that during an interview with Ferneau in Billings, Montana, Ferneau indicated that she had previously used methamphetamine and marijuana.  See Trial Tr. 808.  On cross-examination by Fernerau's attorney and after reviewing his report, Agent Dunlap admitted he had "misspoken" and corrected himself.  See Trial Tr. 817.  Agent Dunlap testified it was another individual, not Ferneau, who admitted prior methamphetamine use.  See Trial Tr. 817.  Finally, in his closing argument,

Ferneau's counsel emphasized Agent Dunlap's error and questioned his credibility.  See Trial Tr. 1448.

Regardless of whether Agent Dunlap's error was intentional or merely a slip of the tongue, the Eighth Circuit Court of Appeals has held that when a witness' false statements are revealed at trial, a defendant is not prejudiced by such statement.  See United States v. Slaughter, 128 F.3d 623 (8th Cir. 1997) ("We cannot fathom how [the defendant] could have prejudiced by having the government's star witness shown as a self-confessed prejurer.").  Thus, the Court finds that Ferneau has failed to establish that she was prejudiced by the statements of DEA Agent Dunlap.

### 2)   PATRICIA "TRISH" WALSH

Ferneau also contends that Patricia "Trish" Walsh lied about her observations of a drug deal involving Patty Rhone and Rigoberto Fernandez.  It appear that Ferneau claims this statement is false because she (Ferneau) was in Tennessee at the time.  Ferneau has failed to make any showing that the testimony of Walsh was false.  An unsupported allegation is insufficient to establish that a witness testified falsely.  The Court finds that Ferneau has failed to establish she was prejudiced by the testimony of Walsh.

### 3)   JAMES RHONE

Ferneau also contends that James Rhone consistently lied to avoid returning to jail.  Ferneau has also failed to establish the falsity of Rhone's testimony.  The Court finds that an unsupported allegation is insufficient to establish that a witness testified falsely.  In addition, Ferneau's counsel cross-examined Rhone about his statement that he was never going back to jail.  See Trial Tr. 943. In his closing argument, Ferneau's counsel directed the jury's attention to Rhone's statements and

asked the jury to question Rhone's credibility.  <u>See</u> Trial Tr. 1456.  The Court finds that Ferneau has

failed to establish that she was prejudiced by the testimony of Rhone.


        4)        **RIGOBERTO FERNANDEZ**

Finally, Ferneau asserts that Rigoberto Fernandez lied about Ferneau's involvement to

receive more lenient treatment.  Ferneau fails to set forth any evidence other than her unsupported

assertions to demonstrate that Fernandez provided false testimony.  On cross-examination, Ferneau's

counsel questioned Ferenandez about his plea agreement with the Government.  <u>See</u> Trial Tr. 886.

In his closing argument, Ferneau's counsel questioned Ferenandez's credibility and argued his

testimony was not reliable.  <u>See</u> Trial Tr. 1451-1454.  In addition, the Court instructed the jury that

it could determine whether a witness's testimony was influenced by his or her plea agreement.

<u>See</u> Trial Tr. 1361; Final Jury Instructions (Docket No. 127).  The Court finds that an unsupported

allegation is insufficient to establish that a witness testified falsely.  Thus, Ferneau has failed to

establish she was prejudiced by Fernandez's testimony.

As to her claims regarding false testimony, the Court finds that Ferneau has failed to

establish cause for the procedural default and prejudice resulting from the alleged errors.  As a

result, the Court finds that Ferneau is not entitled to habeas relief on this claim.


        E.        **PROSECUTORIAL MISCONDUCT**

Ferneau appears to set forth several claims of prosecutorial misconduct.  She complains that

she was contacted by Bismarck Detective Roger Becker and DEA Agent Dunlap in an attempt to

garner her cooperation against co-defendant Barth.  She also complains that the Assistant United

States Attorney assigned to the case contacted her to seek her cooperation against Barth.  Ferneau

asserts that after she informed the Government agent that she did not know anything, she was included as a defendant. She also claims that the prosecutor improperly vouched for the credibility of Fernandez. Finally, Ferneau claims that the Government's attorney improperly argued that Fernandez brought over 18 pounds of methamphetamine when she was charged with 50 grams or more of actual methamphetamine or 500 grams or more of a substance or mixture containing a detectable amount of methamphetamine. The Government contends Ferneau's claims must fail.

The record reveals that Ferneau did not object at trial and failed to raise the issue of prosecutorial misconduct on appeal, even though it was clearly known to her at the time, The Court finds that Ferneau has procedurally defaulted these claim. Thus, to be entitled to habeas relief, Ferneau must first show that her claim implicates constitutional rights. Ferneau must next establish both cause for her procedural default and prejudice from the claimed error.

### 1)   AGENTS CONTACTING FERNEAU

Ferneau asserts that Detective Roger Becker, DEA Agent Dan Dunlop, and Assistant United States Attorney Rick Volk contacted her while she was incarcerated on a state sentence for a "check charge." Ferneau does not allege how such contacts, if they occurred, violate her constitutional rights or warrant habeas relief.[4]

To the extent Ferneau is asserting that her Sixth Amendment right to counsel was violated, her own assertions belie such a claim. Ferneau asserts that she was not indicted until after such contacts occurred. It is well-established that an individual's Sixth Amendment right to counsel does not attach until a prosecution is commenced against a person by means of a complaint, information

---

[4]Assistant United States Attorney Rick Volk denies ever contacting Ferneau. See United States' Memorandum in Opposition to Motion Under 28 U.S.C. § 2255, p. 38 n.7. (Docket No. 210).

or indictment.  McNeil v. Wisconsin, 501 U.S. 171, 175 (1991).  Thus, it is clear Ferneau's right to counsel had not attached at the time she was allegedly contacted by the Government agents.

To the extent Ferneau is asserting that her Fifth Amendment rights under Miranda were violated, this too must fail.  As discussed above, Miranda only applies to custodial interrogations. Ferneau does not set forth the circumstances surrounding the alleged contacts by Government agents, nor does she specify whether she made any statements which were used at trial.

The Court finds that Ferneau has failed to establish that any contacts made by Detective Becker, Agent Dunlap, or AUSA Volk violated her constitutional rights.  Ferneau's claims in this regard must fail as a matter of law.

### 2)      VINDICTIVE PROSECTUION

Ferneau also appears to allege a claim of vindictive prosecution.  The Government contends that Ferneau has failed to establish a claim for vindictive prosecution.

A defendant's due process rights may be violated if she is the subject of vindictive prosecution.  United States v. Leathers, 354 F.3d 955, 961 (8th Cir. 2004).  A prosecution designed solely to punish a defendant for exercising a valid legal right violates due process.  See Blackledge v. Perry, 417 U.S. 21, 25-26, (1974); United States v. Graham, 323 F.3d 603, 606 (8th Cir. 2003). It is the defendant's burden to show that the prosecution was brought in order to punish the defendant for the exercise of a legal right. See United States v. Kriens, 270 F.3d 597, 602 (8th Cir. 2001).  A vindictive or improper motive may be proved either by direct or circumstantial evidence. See United States v. Beede, 974 F.2d 948, 951 (8th Cir.1992).  As long as there is probable cause to believe a defendant had committed a crime, the prosecutor's decision to indict is almost entirely within his discretion.  United States v. Kelley, 152 F.3d 881, 886 (8th Cir. 1999).  This burden is a

heavy one, and the Court is mindful of the broad discretion given to prosecutors in carrying out their duty to enforce criminal statutes.  Id. at 885-886.

Ferneau makes no showing that the decision to charge in this case was vindictive.  She simply claims that the decision to charge her was based on her statement to officers that she did not know anything.  Such conclusory claims are insufficient to make a "threshold showing" of vindictive prosecution.  United States v. Hirsch, 360 F.3d 860, 864 (8th Cir. 2004).  The Court finds that Ferneau has wholly failed to establish that her due process rights were violated by the prosecutor's decision to seek an indictment against her.  As a result, the Court finds that this claim must fail.

### 3)   VOUCHING FOR THE CREDIBILITY OF WITNESSES

Ferneau contends that the prosecutor improperly vouched for the credibility of Rigoberto Fernandez.  The Government asserts that his claim is completely frivolous and should be summarily dismissed.

A thorough review of the record reveals no information to indicate that the prosecutor vouched for the credibility of Fernandez.  The record does contain statements made by the Court at Ferneau's sentencing hearing regarding the credibility of Ferenandez.  The Court determined that Fernandez's testimony was credible and reliable for purposes of resolving factual disputes presented at the sentencing hearing.  See Sentencing Tr. 11-12.  The record also reveals that the Government cited to the Court's comments in its brief to the Eighth Circuit Court of Appeals.  The Court finds that this claim is wholly without merit and must be dismissed.

34

4)      **QUANTITY OF METHAMPHETAMINE**

Finally, Ferneau appears to assert that the prosecutor engaged in misconduct by stating in the Government's opening statement that Fernandez would testify to bringing 18 pounds of methamphetamine to Ferneau's house when she was only charged with 50 grams or more of actual methamphetamine, or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. The Government asserts this claim is frivolous and should be dismissed.

Fernandez clearly testified that he brought 18 pounds of methamphetamine to Ferneau's house. See Trial Tr. 840-847. Ferneau fails to appreciate that 18 pounds is an amount greater than 50 grams. Ferneau was charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. See Docket No. 11. The Court finds that there can be no prosecutorial misconduct for referring to an amount of methamphetamine greater than 50 grams. Ferneau has failed to establish the Government engaged in prosecutorial misconduct and this claim must fail.

F.      **SENTENCE**

Ferneau also raises challenges to her sentence. She claims that the Court miscalculated the amount of drugs attributable to her, arguing that no drugs were found in her home. She also challenges her sentence as violative of Booker and Apprendi. Finally, Fereneau appears to assert that the Court did not have sufficient evidence to support a two-level enhancement in her sentence.

1)   **DRUG QUANTITY**

Ferneau appears to contend that because no drugs were found in her home, she should not be held responsible for any of the methamphetamine.  As with several of her previous claims, Ferneau's claim that there was insufficient evidence to determine the amount of methamphetamine attributable to a defendant is not a constitutional or jurisdictional claim than can be raised in a Section 2255  motion.  United States v. Ward, 55 F.3d 412, 413 (8th Cir. 1995); United States v. Anderson, 25 F.3d 704, 706 (8th Cir. 1994).

Even if Ferneau's claim could be considered on its merits, it must fail.  It is well-established that the defendant may be held accountable for drug quantities that were within the scope of the conspiracy that were reasonably foreseeable to her, provided there is a preponderance of the evidence to support these findings.  United States v. Vinton, 429 F.3d 811, 817 (8th Cir. 2005).  Further, a defendant may be held accountable for drug transactions in which she was not directly involved or which occurred at other locations if those transactions "were part of the same course of conduct or scheme."  United Stats v. Morin, 437 F.3d 777, 782 (8th Cir. 2006); United States v. Frazier, 280 F.3d 835, 852 (8th Cir. 2002).

At the sentencing hearing, the Court attributed 2,440 grams of the methamphetamine to Ferneau, of which 404.37 grams was actual methamphetamine.  See Sentencing Tr. 13.  This amount was based on (1) the amount of methamphetamine identified in the overt acts alleged in Count One of the Indictment (with the exception of the methamphetamine seized from Barth's residence in March 2003), (2) the amount seized by law enforcement from Rigoberto Fernandez in Montana in September 2000, and (3) the amount seized from the Charles Chadwick residence in Mandan in October 2000.  See PSR ¶ 13-27; Sentencing Tr. 12.

There is no question that the amount of methamphetamine attributed to Ferneau was the result of actions which were a part of the conspiracy.  As the Government correctly noted, Ferneau could have easily been held accountable for an even greater quantity of methamphetamine.  Ferneau fails to appreciate that the quantities of methamphetamine attributable to her are by virtue of her membership in the conspiracy – not simply through her own individual actions.  In other words, by participating in a drug conspiracy, a defendant's sentence may be based on drug quantities that were part of the conspiracy, even if that particular defendant was not personally involved in all the drug transactions made by the entire conspiracy.

The Court finds that Ferneau has failed to establish that the methamphetamine quantity calculated was incorrect.  Thus, the Court finds that this claim must fail.

### 2)       APPRENDI/BOOKER

Fereneau appears to challenge her sentence on the grounds it violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and Booker v. United States, 543 U.S. 220 (2005).  She also appears to assert that her sentence should be given the same consideration given to those with appeals pending when Booker was issued.

Ferneau was sentenced on March 9, 2004, when application of the Sentencing Guidelines was mandatory.  At that time, only the Apprendi decision had been issued.  Ferneau filed her notice of appeal on March 17, 2004.  See Docket No. 158.  In June 2004, the Supreme Court handed down Blakely v. Washington, 542 U.S. 296 (2004), which extended Apprendi to the State of Washington's determinate sentencing scheme and held that judicial findings of fact by a preponderance of the evidence which increase a defendant's sentencing range violated the Sixth Amendment.  In January 2006, the Supreme Court issued its opinion in Booker which extended its holding in Blakely to the

37

United States Sentencing Guidelines.  The Court in Booker struck down those portions of the

Sentencing Reform Act that made the Sentencing Guidelines mandatory.  The Eighth Circuit issued

its decision on Ferenau's appeal on September 14, 2005.  See United States v. Barth, 424 F.3d 753,

752 (8th Cir. 2005).

As to Ferneau's claim that her sentence violated Apprendi, the Court finds this claim must

fail.  Apprendi only held that facts, other than a prior conviction, that increase the maximum sentence

that could be imposed upon a defendant must be pled and proved beyond a reasonable doubt.  Count

One of the Indictment alleged that the conspiracy involved 50 grams or more of actual

methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount

of methamphetamine.  See Docket No. 11.  The penalty for offenses involving these amounts of

methamphetamine increase the maximum sentence to life imprisonment as compared to the 40-year-

or 20-year-maximum sentences for lesser amounts.  See 21 U.S.C. § 841(b)(1)(A), (B), and (C).  The

jury verdict determined that Ferneau's offense involved 50 grams or more of actual

methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount

of methamphetamine.  See Docket No. 131.  Therefore, Ferneau has failed to establish a violation

of Apprendi based on facts that increased the maximum sentence.

To the extent Fereneau is claiming that Apprendi was violated because the jury did not find

her prior convictions beyond a reasonable doubt, that claim must be rejected.  It is well-established

that Apprendi does not apply to prior convictions. Therefore, the Court finds Ferneau had failed to

allege a violation of Apprendi.

Ferneau also claims that her sentence violated Booker.  Ferneau asserts that her Booker claim

was preserved in the district court.  The Eighth Circuit rejected this claim in her direct appeal.

United States v. Barth, 424 F.3d 753, 764 (2005).  Issues that have been decided on direct appeal

cannot be relitigated in a Section 2255 motion.  United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).  Ferneau also asserts that she should be given the same consideration under Booker as defendants who had appeals pending when Booker was issued.  The record reflects she was given such consideration.[5]

Ferneau also appears to claim that she could only be sentenced on facts found by the jury. It appears that Ferneau is claiming that she could only be sentenced based upon 50 grams of actual methamphetamine or 500 grams of a mixture or substance containing a detectable amount of methamphetamine.  Again, Ferneau fails to appreciate the fact that the Indictment involved charges involving 50 grams or more of actual methamphetamine or 500 grams or more of a mixture of substance containing a detectable amount of methamphetamine.  The jury clearly concluded that the conspiracy involved at least 50 grams of actual methamphetamine or 500 grams of a mixture or substance containing a detectable amount of methamphetamine.  Even after Booker, trial courts may make findings of fact that increase a defendant's offense level as long as such findings are made with the understanding that the Sentencing Guidelines are to be applied in an advisory fashion. United States v. Morell, 429 F.3d 1161, 1164 (8th Cir. 2005).  The Court's determination of the amount of methamphetamine involved for sentencing purposes did not run afoul of Booker.  Finally, to the extent Ferneau claims that the judicial factfinding in her case was conducted under a mandatory application of the Guidelines, this claim must fail.  Ferneau raised this issue on appeal and it was rejected.  See United States v. Barth, 424 F.3d 753, 764 (2005).  Issues that have been

---

[5]Defendants who had appeals pending when Booker was issued, and who had not preserved the issue for appeal, received plan error review.  United States v. Vinton, 429 F.3d 811, 819 (8th Cir. 2005).  The Eighth Circuit reviewed Ferneau's claim for plain error.  United States v. Barth, 424 F.3d 753, 764 (8th Cir. 2005).

decided on direct appeal cannot be relitigated in a Section 2255 motion.  United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001).

### 3)      SENTENCING ENHANCEMENT

Finally, Ferneau asserts that the Court did not have sufficient evidence to support a two -level enhancement of her sentence.  The Court did not apply a two-level enhancement.  The Court determined that the aggravating role increase under U.S.S.G. § 3B1.1 was not triggered in her case. See Sentencing Tr. 16.

It is unclear whether Ferneau is also alleging that the Court erred in rejecting her request for a two-level reduction under U.S.S.G. § 3B1.2 for being a minor participant.  It is well-established that an appellate court reviews a district court's factual findings under Section 3B1.1 for clear error. United States v. Willis, 433 F.3d 634, 637 (2006).  In order to establish prejudice on this issue, Ferneau must show that the Eighth Circuit Court of Appeals would have found the district court's findings clearly erroneous.  Becht v. United States, 403 F.3d 541, 545 (8th Cir. 2005).

At the sentencing hearing the Court addressed Ferneau's request and stated the following:

> First of all, the request from the defendant that there be a reduction for a minor participant role under 3B1.2 – that's the mitigating provision role of the Guidelines – that's rejected.  Clearly, under the case law out of the Eighth Circuit – and I sat on the Eighth Circuit a few weeks ago and was assigned several cases that specifically dealt with addressing the issue of a mitigating role in drug cases, so I'm familiar with the case law in that area – and, clearly, the defendant has the burden of proof of establishing that she was a minor participant or a minimal participant in the criminal activity, and I'm not convinced from the evidence that was presented that she has even come close to sustaining that burden of proof.  The evidence, in fact, is overwhelmingly to the contrary.  So the Court will not accept any – and will reject any request for a reduction under 3B1.2

See Sentencing Tr. 13-14.   It is apparent from the trial testimony of Fernandez and Rhone that Ferneau did not play a minimal or minor role in the criminal activity.

The Court finds that Ferneau has failed to establish that an appellate court would find the Court's findings at the sentencing hearing to be clearly erroneous.  There was overwhelming evidence to establish that Ferneau was not a minor or minimal participant in the criminal activity. Thus, Ferneau's claims regarding alleged error in the application of sentencing enhancements must fail.

### G.      JURY INTERVIEWS

Ferneau also contends that if the jurors would have known the lengthy sentence she was facing, they would have found her not guilty of the drug trafficking offense.  This claim is not supported by any affidavit or other factual proof.  Even if it were, it is well-established that a jury must reach its verdict without consideration of the sentence that might be imposed.  See Rogers v. United States, 422 U.S. 35, 40 (1975); Manual of Model Criminal Jury Instructions for the Eighth Circuit, Model Jury Instructions, § 3.12 ("[I]f the defendant is found guilty, the sentence to be imposed is my responsibility.  You may not consider punishment in any way in deciding whether the Government has proved its case beyond a resonable doubt").  The Court finds that Ferneau has failed to allege a constitutional violation warranting habeas relief.

### III.    CONCLUSION

For the reasons set forth above, the Court **DENIES** the Defendant's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.  (Docket No. 196).

41

In addition, the Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith. Coppedge v. United States, 369 U.S. 438, 444-45 (1962).  Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings.  Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983). Therefore, a certificate of appealability will not be issued by this court.[6]

If Ferneau desires further review of her Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, she may request issuance of a certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with Tiedeman v. Benson, 122 F.3d 518, 250-22 (8th Cir. 1997).

**IT IS SO ORDERED**

Dated this 2nd day of February, 2007.

/s/  Daniel L. Hovland
Daniel L. Hovland, Chief Judge
United States District Court

---

[6]The Court of Appeals for the Eighth Circuit has opined that the district courts possess the authority to issue Certificates of Appealability under Section 2253(c).  Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).